**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lorenzo Jesus MEJIA–ALARCON,**
**Defendant–Appellant.**

**No. 91–2048.**

United States Court of Appeals,
Tenth Circuit.

June 7, 1993.

Vol. III at 34–35 (emphasis added).

984

Michael G. Katz, Federal Public Defender, and Susan L. Foreman, Asst. Federal Public Defender, Denver, CO, for defendant-appellant.

Don J. Svet, U.S. Atty., Albuquerque, NM, and Judith A. Patton, Asst. U.S. Atty., Las Cruces, NM, for plaintiff-appellee.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.*

EBEL, Circuit Judge.

On December 5, 1990, a jury found the defendant-appellant, Lorenzo Jesus Mejia–Alarcon (Mejia), guilty of one count of conspiracy to possess with intent to distribute heroin, one count of possession of heroin with intent to distribute, and one count of carrying or using a firearm in relation to a drug-trafficking crime. The counts arose from an undercover operation conducted by the Drug Enforcement Administration and the Las Cruces–Dona Ana County Metro Narcotics Unit. During the investigation, Agent Frank Ruiz negotiated three purchases of heroin from Mejia's co-defendant, Carlos Galaviz.

On direct appeal, Mejia contends that the district court erred (1) in permitting the prosecution to impeach him with a prior conviction and (2) in failing to ascertain on the record whether Mejia voluntarily and knowingly consented to a stipulation entered by his counsel that admitted that the substance found in Mejia's car was heroin and that the weights in the laboratory reports were accurate. In addition, Mejia filed a supplemental pro se brief in which he contended that he had been denied his Sixth Amendment right to effective assistance of counsel at trial.

As to the first contention, we hold that although the district court erred in admitting the prior conviction, the error was harmless. As to the second contention, we hold that the district court did not err in failing to provide more explicitly on the record that Mejia entered the stipulation knowingly and voluntarily. Last, we hold that Mejia's ineffective assistance of counsel claim fails as to the errors he has alleged on direct appeal.

## I. FACTS

Agent Ruiz of the Las Cruces–Dona Ana County Metro Narcotics Unit was working undercover in the summer of 1990 in a heroin-trafficking investigation conducted by his narcotics unit and the United States Drug Enforcement Agency. While undercover, Agent Ruiz arranged to purchase heroin from Mejia's co-defendant, Carlos Galaviz, on three occasions.

During the first transaction, Galaviz told Agent Ruiz that a man named "Lorenzo" was involved in the heroin trafficking scheme. Agent Ruiz understood Galaviz to be saying that Lorenzo was the "main man." "Lorenzo" is Mejia's first name.

Mejia drove Galaviz to the second transaction, which took place on August 23, 1990. The buy took place at the Desert Sun Lounge in Las Cruces, New Mexico. While Galaviz and Agent Ruiz completed the purchase in Agent Ruiz's car, Mejia waited inside the lounge. When Agent Ruiz asked Galaviz who was with him, Galaviz responded that it was "Lorenzo." Although Galaviz de-

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Therefore, the case is ordered submitted without oral argument.

nied that it was the Lorenzo who was the "main man," he did say that Mejia knew "what's going on." Agent Ruiz testified that drug traffickers typically do not readily identify their suppliers. Once inside Agent Ruiz's car, Galaviz told Agent Ruiz that he had "the stuff" in the car he had come in, but that he had to get the keys from Lorenzo. He went into the bar, got the keys from Mejia, and then retrieved a package of heroin from the car.

On September 8, 1990, Mejia drove Galaviz first to Juarez, Mexico, and then to a Whataburger in Las Cruces, where the third drug transaction between Agent Ruiz and Galaviz was to take place. Agent Ruiz testified that the heroin involved was coming from Juarez. Mejia often traveled to Juarez to visit relatives and to buy cheap sodas for his wife's daycare center. Agents arrested both Mejia and Galaviz at the Whataburger. Upon an inventory search of Mejia's car after his arrest, agents found 200 grams of heroin on the floorboard of the passenger's side. On the driver's side, agents found a loaded weapon, the receipt for which they found in Mejia's wallet.

Mejia was charged in a superseding indictment on October 24, 1990, with one count of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), 21 U.S.C. § 846, and 18 U.S.C. § 2; one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2; and one count of carrying or using a firearm in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1), 21 U.S.C. § 846, and 18 U.S.C. § 2.

On December 5, 1990, a jury in the District of New Mexico found Mejia guilty on all three counts. Mejia was sentenced to concurrent, 70–month sentences on the drug counts and a consecutive 60–month sentence on the gun-possession count. In addition, Mejia was sentenced to two four-year terms and one three-year term of supervised release, all to run concurrently.

Mejia appeals, asserting the following errors occurred below: (1) that the district court erred in permitting the prosecution to impeach him with a prior conviction, (2) that the district court erred in failing to ascertain on the record whether Mejia voluntarily and knowingly consented to a stipulation that admitted that the substance found in Mejia's car was heroin and that the weights in the laboratory reports were accurate, and (3) that he was denied his Sixth Amendment right to effective assistance of counsel at trial. We will address each contention in turn.

## II. ADMISSION OF THE PRIOR CONVICTION

At a pretrial hearing, Mejia moved in limine to exclude the admission of his prior conviction for the unauthorized acquisition and possession of food stamps. The court denied the motion in limine, ruling that the government could use the conviction to impeach Mejia if he testified, apparently on the ground that the conviction was for a crime of dishonesty or false statement under Federal Rule of Evidence 609(a)(2). At trial, Mejia made no further objection to the admission of the prior conviction. In fact, Mejia's counsel brought the conviction out on direct examination of Mejia, presumably to lessen its impact. Mejia now contends that the district court erred in admitting the conviction. We will first discuss whether Mejia waived his objection and then will assess the merits of his contention that evidence of his prior food-stamp conviction was inadmissible.

### A. Waiver

■ As an initial matter, the government contends that Mejia's motion in limine was insufficient to preserve his objection to the prior food-stamp conviction and that we should therefore review its admission only for plain error. *See generally United States v. Jordan*, 890 F.2d 247, 250 (10th Cir.1989) (noting the general rule that if appellant failed to object at trial, appellate review is only for plain error).[1] We disagree.

1. The government asserts that Mejia waived his objection for another reason. In asking the

court to exclude the prior conviction, Mejia's counsel stated he was "just seeking to prohibit

A pretrial motion in limine to exclude evidence will not always preserve an objection for appellate review. *See United States v. Sides,* 944 F.2d 1554, 1560 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 604, 116 L.Ed.2d 627 (1991). However, a motion in limine may preserve an objection when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge. *See Greger v. Int'l Jensen, Inc.,* 820 F.2d 937, 941–42 (8th Cir.1987); *Palmerin v. City of Riverside,* 794 F.2d 1409, 1413 (9th Cir.1986); *Sprynczynatyk v. General Motors Corp.,* 771 F.2d 1112, 1118–19 (8th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986); *American Home Assurance Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321, 324–25 (3d Cir.1985). "When counsel diligently advances the contentions supporting a motion [in limine] and fully apprises the trial judge of the issue in an evidentiary hearing, application of the rule [requiring parties to reraise objections at trial] ... make[s] little sense." *Sides,* 944 F.2d at 1560. In such circumstances, parties are entitled to " 'treat th[e] ruling as the law of the case' " and to rely on it. *Cook v. Hoppin,* 783 F.2d 684, 691 n. 2 (7th Cir.1986) (quoting *United States v. Rios,* 611 F.2d 1335, 1339 n. 4 (10th Cir.1979)).

Permitting motions in limine to preserve objections in such circumstances is consistent with the elimination of formal exceptions under modern procedural rules. Although Federal Rule of Evidence 103(a)(1) requires parties to make "timely" objections, this provision must be construed in light of Federal Rule of Criminal Procedure 51, which states that formal exceptions are unnecessary. Requiring a party to renew an objection when the district court has issued a

definitive ruling on a matter that can be fairly decided before trial would be in the nature of a formal exception and therefore unnecessary. *See American Home,* 753 F.2d at 324 (applying same reasoning in the context of a civil case and Federal Rule of Civil Procedure 46); *Palmerin,* 794 F.2d at 1413 (same); *see also* Fed.R.Crim.P. 51 advisory committee's note 1 (stating that Fed. R.Crim.P. 51 and Fed.R.Civ.P. 46 are "practically identical" and "relate[ ] to a matter of trial practice which should be the same in civil and criminal cases in the interest of avoiding confusion"). Thus, as the Third Circuit notes, the question is whether an objection at trial would have been more in the nature of a formal exception or in the nature of a timely objection calling the court's attention to a matter it need consider. *American Home,* 753 F.2d at 324.

Furthermore, we believe that an absolute rule holding that motions in limine may never preserve an objection is a trap for the unwary, who sensibly rely on a definitive, well-thought-out pretrial ruling on a subject that will not be affected by the evidence that comes in at trial. Moreover, requiring the renewal of objections after a definitive ruling may be a needless provocation to the trial judge, not to mention a distracting interruption during the trial.

Consequently, we apply a three-part test to determine whether it was necessary for an objecting party to renew the objection at trial. First, we ask whether the matter was adequately presented to the district court. *See Palmerin,* 794 F.2d at 1413 (requiring that the subject of the objection be fully explored during the hearing on the motion in limine); *see also Sprynczynatyk,* 771 F.2d at 1119 (noting the matter was fully briefed and argued); *American Home,* 753 F.2d at 324–25 (noting that the motion in limine set forth

---

the government from attempting to utilize that [prior conviction] as part of their *case in chief* against Mr. Mejia." Vol. III at 13 (emphasis added). Therefore, the government argues, Mejia did not object to the government's use of the prior convictions for *impeachment* purposes and cannot now complain about the court's ruling permitting use of the prior convictions to impeach Mejia. However, it is clear from the record that the government and the district court understood that Mejia objected to the use of the

food-stamp conviction in both the prosecution's case-in-chief and for impeachment. The prosecutor and the district court treated the issue raised by Mejia as concerning whether the government could use the convictions "should the defendant testify," and the prosecutor also spoke of using it for "impeachment." Vol. III at 13. Thus, Mejia did not fail to object to the use of his prior conviction for impeachment purposes on this ground.

reasons, including case citations, to support the exclusion of the evidence and that the district court held a hearing at which it considered counsel's arguments); *Sides,* 944 F.2d at 1560 (suggesting that a motion in limine may preserve an objection "where counsel diligently advances the contentions supporting a motion and fully apprises the trial judge of the issue in an evidentiary hearing"). Here, we find that Mejia's counsel adequately argued the issue of whether Mejia's prior food-stamp conviction was admissible under Rule 609(a)(2).

Second, we determine whether the issue is of the type that can be finally decided in a pretrial hearing. That is, some evidentiary issues are akin to questions of law, and the decision to admit such evidence is not dependent upon the character of the other evidence admitted at trial. *See e.g., Sprynczynatyk,* 771 F.2d at 1118–19 (holding that motion in limine preserved objection to post-hypnosis recollection and noting that "[i]t was not a typical motion in limine situation where a hypothetical question is posed whose nature and relevance is unclear before trial"); *see also Cook,* 783 F.2d at 690–91 & n. 2 (holding that the plaintiff's motion in limine to exclude statements in medical records on hearsay grounds preserved objection). On the other hand, some admission decisions are very fact-bound determinations dependent upon the character of the evidence introduced at trial. *See, e.g., Palmerin,* 794 F.2d at 1411–12 (distinguishing two prior Ninth Circuit cases, one in which a motion in limine preserved an objection and one in which it did not, on the ground that in the latter, the issue was "highly dependant upon the trial context" while in the former "[t]he objection was adequately covered by the motion *in limine*"); *United States v. Cobb,* 588 F.2d 607, 612–13 (8th Cir.1978) (stating that a party should ordinarily renew at trial an objection to the admission of a conviction older than ten years under Fed.R.Evid. 609(b), because the decision to admit it rests on "specific facts and circumstances" adduced at trial, and

Fed.R.Evid. 609(b) requires a balancing of the probative value against the prejudicial effect of the old conviction), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).

Mejia's motion in limine presented an evidentiary issue akin to a question of law: whether Mejia's food-stamp conviction qualified as a crime of dishonesty under Rule 609(a)(2).[2] Mejia was therefore entitled to rely on the district court's ruling that the conviction was admissible, as long as the ruling was definitive.

This brings us to the third requirement for reliance on a motion in limine: that the district court's ruling must be definitive. *See e.g., Greger,* 820 F.2d at 941; *Palmerin,* 794 F.2d at 1413 (noting the district court's ruling was "explicit and definitive" and that "[t]here was no hint that the ruling might be subject to reconsideration"); *Sprynczynatyk,* 771 F.2d at 1118 ("The district court's denial of the motion was not made conditionally or with the suggestion that the matter would be reconsidered."); *American Home,* 753 F.2d at 325; *see also Doty v. Sewall,* 908 F.2d 1053, 1056 (1st Cir.1990) (holding that "a pretrial motion in limine is not sufficient to preserve an issue for appeal where the district court declines to rule on the admissibility of the evidence until the evidence is actually offered"); *cf. United States v. Miles,* 889 F.2d 382, 384 (2d Cir.1989) (per curiam) (holding that a ruling made before direct examination of a witness regarding admissibility of the witness's prior conviction did not preserve the objection, as the district court had explicitly indicated that the ruling was not final and should be renewed). Here, the district court unequivocally ruled that the prior food-stamp conviction was admissible, and Mejia was entitled to rely on that ruling.

*McEwen v. City of Norman,* 926 F.2d 1539 (10th Cir.1991), is not inconsistent with our holding today that an adequately presented motion in limine may preserve an objection if it concerns an issue that can be and is defini-

---

2. In contrast, we note that Mejia would not have been entitled to rely on a pretrial ruling admitting the conviction under Rule 609(a)(1), as any final determination as to admissibility under Rule 609(a)(1) rests on a balancing of the proba-

tive value and prejudicial effect of the conviction—a balancing that could only properly be performed after an assessment of the evidence that had come in up to the point of its admission. *Cf. Cobb,* 588 F.2d at 612–13.

tively ruled upon in a pretrial hearing. In *McEwen*, the district court expressly reserved ruling on the plaintiff's motion in limine until trial. *Id.* at 1543. When the court finally ruled at trial that the objected-to expert testimony would be admitted, the plaintiff failed to renew the objection—even though the district court invited the plaintiff to make a record on the ruling. *Id.* The only contemporaneous objection the plaintiff made during the expert's testimony was unrelated to the objection raised on appeal. *See id.* at 1543, 1544. Because the district court in *McEwen* expressly declined to issue a definitive pretrial ruling, the plaintiff was required under the test we have enunciated today to renew the objection at trial.[3]

■ Despite our holding today, we stress that "[u]nder the best of circumstances, counsel must exercise caution in relying exclusively upon rulings made in connection with pretrial motions *in limine* as the basis for preserving claims of error in the admission and exclusion of evidence." *Sides,* 944 F.2d at 1559 (citation omitted). Prudent counsel will renew objections at trial, because the three-part test we enunciate today carries with it the inherent risk that the appellate court might find that the objection was of the type that must be renewed and that the party, by relying on the motion in limine, has waived the objection. Indeed, most objections will prove to be dependent on trial

context and will be determined to be waived if not renewed at trial.

### B. *Admissibility of the Food–Stamp Conviction*

■ Having decided that Mejia properly preserved his claim, we now address the merits. We hold that the district court erred in admitting the food-stamp conviction under Federal Rule of Evidence 609(a)(2). Mejia was convicted of acquiring and possessing food coupons having a value of $500 in a manner not authorized by law.[4] He committed the crime by selling four chrome pick-up truck wheels to an undercover Department of Agriculture agent. This food-stamp conviction simply does not qualify as a crime of dishonesty or false statement under this Circuit's construction of Rule 609(a)(2).

■ Rule 609(a)(2) permits the admission of prior convictions for crimes involving dishonesty or false statement for the purpose of attacking the credibility of a witness.[5] We have narrowly defined the term "dishonesty and false statement" as used in Rule 609(a)(2). As we have previously noted, the adoption of Rule 609 was the culmination of a trend in judicial decisions toward restricting the use of prior convictions for impeachment purposes. *United States v. Wolf,* 561 F.2d 1376, 1380 (10th Cir.1977). "Although it may

3. We also note that, although the basis for the objection in *McEwen* is unclear, the objection apparently was based on the allegedly prejudicial effect of the proffered expert testimony. *See McEwen,* 926 F.2d at 1543. Consequently, the trial court's reservation of ruling until trial is not the only reason the plaintiff was required to renew the objection: the plaintiff also should have renewed the objection because the issue was of the type that could only best be assessed in light of the evidence that came in at trial. Broader dicta in *McEwen* suggesting that a motion in limine may never preserve an objection is not controlling, since that court was not faced with a case in which the motion in limine could have preserved the objection under the three-part test we set out today. Further, the broad dicta in *McEwen* is inconsistent with prior and subsequent Tenth Circuit cases holding that a motion in limine may preserve an objection for appeal. *See United States v. Szabo,* 789 F.2d 1484, 1487 (10th Cir.1986) (holding that Confrontation Clause objection was sufficiently raised in a motion in limine); *Sides,* 944 F.2d at 1560 (suggest-

ing that had the defendant diligently advanced his contentions supporting his motion in limine, the objection might have been preserved by the motion); *cf. United States v. Rios,* 611 F.2d 1335, 1339 n. 4 (10th Cir.1979) (holding that once a defendant's hearsay objection made during trial was overruled, the "defense counsel was entitled to treat this ruling as the law of the case and to explain or rebut the evidence which had come in over his protest ... without *waiving* his earlier objection").

4. Although the record is unclear as to which statutory provision Mejia violated, 7 U.S.C. § 2024 seems to be the most likely provision. The government points to no other relevant provision.

5. Rule 609(a)(2) provides:

For the purpose of attacking the credibility of a witness, ... evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

be argued that any willful violation of the law ... evinces a lack of character and a disregard for all legal duties, including the obligations of an oath, Congress has not accepted that expansive legal theory" and "has 'narrowly defined' the offenses comprehended by Rule 609(a)(2)." *United States v. Millings*, 535 F.2d 121, 123 (D.C.Cir.1976). The Conference Committee Report on the rule specified the type of crimes contemplated by the rule:

> By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subordination of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

H.R.Conf.Rep. No. 1597, 93d Cong., 2d Sess. 9, *reprinted in* 1974 U.S.C.C.A.N. pp. 7051, 7098, 7103. Nor do we believe that the inclusion of the term "crimen falsi" in the Conference Committee Report broadens the category of crimes admissible under Rule 609(a)(2). As the District of Columbia Circuit has noted, even in its broadest sense, the term "crimen falsi" has encompassed only those crimes characterized by an element of deceit or deliberate interference with the truth. *United States v. Smith*, 551 F.2d 348, 362–63 & n. 26 (D.C.Cir.1976). Thus, relying

on the Conference Committee Report, we have held that to be admissible under Rule 609(a)(2), the prior conviction must involve "some element of deceit, untruthfulness, or falsification which would tend to show that an accused would be likely to testify untruthfully." [6] *United States v. Seamster*, 568 F.2d 188, 190 (10th Cir.1978).

Consequently, we have held that crimes like burglary, robbery, and theft are not automatically admissible under Rule 609(a)(2), *Seamster*, 568 F.2d at 190, but that a conviction for making false and misleading statements in the sale of securities is, *United States v. O'Connor*, 635 F.2d 814, 818–19 (10th Cir.1980). We have also held that a conviction for making false claims to the United States government·is a crime of dishonesty or false statement. *Wolf*, 561 F.2d at 1381. And in *United States v. Mucci*, 630 F.2d 737 (10th Cir.1980), we held that issuing a bad check *while knowing it will be dishonored* is a crime of dishonesty or false statement. *Id.* at 743; *accord United States v. Kane*, 944 F.2d 1406, 1412 (7th Cir.1991); *United States v. Rogers*, 853 F.2d 249, 252 (4th Cir.), *cert. denied*, 488 U.S. 946, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988); *United States v. Livingston*, 816 F.2d 184, 190 (5th Cir.1987).[7]

Furthermore, we have suggested that the trial court may look beyond the elements of an offense that is not considered a per se crime of dishonesty to determine whether the

---

**6.** The Advisory Committee Note added after the 1990 amendment to the rule likewise confirms our narrow reading of both the rule and its legislative history. The committee "concluded that the Conference Report provides sufficient guidance to trial courts and that no amendment [to the dishonesty and false statement provision] is necessary, notwithstanding some decisions that take an *unduly* broad view of 'dishonesty,' admitting convictions such as for bank robbery or bank larceny." Fed.R.Evid. 609 advisory committee's note (emphasis added).

**7.** Most of the cases from other circuits reflect an understanding of deceitfulness similar to the narrow construction we gave Rule 609(a)(2) in *Seamster*. *See, e.g., United States v. Brackeen*, 969 F.2d 827, 829–31 (9th Cir.1992) (per curiam) (en banc) (holding that bank robbery per se is not a crime of dishonesty and quoting Tenth Circuit case *Seamster* in support of its holding); *Cree v. Hatcher*, 969 F.2d 34, 37–38 (3d Cir.) (holding that conviction for willful failure to file income

tax return is not a crime of dishonesty, because under Third Circuit case law the statute violated did not include as an element an intent to conceal the tax liability), *cert. dismissed*, —— U.S. ——, 113. S.Ct. 1147, 121 L.Ed.2d 577 (1992); *Coursey v. Broadhurst*, 888 F.2d 338, 342 (5th Cir.1989) (holding that cattle theft is not a crime of dishonesty); *United States v. Newman*, 849 F.2d 156, 163 (5th Cir.1988) (implying that theft and felony theft are not included in Rule 609(a)(2), but holding that theft-forgery and theft by deception are included); *United States v. Mehrmanesh*, 689 F.2d 822, 833 (9th Cir.1982) (holding that a drug smuggling conviction is not per se a crime of dishonesty); *Millings*, 535 F.2d at 123 (holding that convictions for possession of narcotics and carrying a gun without a license are not crimes of dishonesty). See generally *Smith*, 551 F.2d at 356–66, for an excellent discussion of Rule 609(a)(2) and its legislative history.

particular conviction rested upon facts establishing dishonesty or false statement. *See United States v. Whitman*, 665 F.2d 313, 320 (10th Cir.1981); *Seamster*, 568 F.2d at 191. For example, in *Whitman*, we held that a grand larceny conviction stemming from a land fraud scheme was a crime of dishonesty, because the larceny was committed by false pretenses rather than by stealth. 665 F.2d at 320.

However, neither the elements of the offense for which Mejia was convicted nor any evidence concerning the way it was committed support the district court's conclusion that the conviction was admissible as a crime of dishonesty or false statement under Rule 609(a)(2). The crime for which Mejia was apparently convicted—unauthorized acquisition and possession of food stamps under 7 U.S.C. § 2024[8]—does not include an element of deceitfulness or untruthfulness.[9] Nor did the government show that Mejia acquired the food-stamps in a deceitful manner: to the contrary, the Presentence Report indicated that Mejia acquired the stamps simply by giving an undercover Department of Agriculture agent four chrome pick-up truck wheels in exchange for the stamps.[10] Thus, Mejia's conviction for illegally acquiring and possessing food stamps does not appear to bear on the likelihood that he would testify truthfully any more than would a burglary conviction imposed for the illegal acquisition of other goods. The district court therefore erred in admitting Mejia's prior food-stamp conviction under Rule 609(a)(2).[11]

■ Having determined that the district court erred in admitting the prior conviction, we must now consider whether the error was harmless. Because the defendant alleges no constitutional error, we will apply the harmless-error analysis of *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Under *Kotteakos*, a non-constitutional error is harmless unless it had a "substantial influence" on the outcome or leaves one in "grave doubt" as to whether it had such effect. 328 U.S. at 765, 66 S.Ct. at 1248; *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc). We must therefore gauge whether the admission of Mejia's food-stamp conviction " 'substantially influenced' the jury's verdict in the context of the entire case against him." *United States v. Short*, 947 F.2d 1445, 1455 (10th Cir.1991) (citing *United States v. Williams*, 923 F.2d 1397, 1401 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992).

We do not believe that the admission of the food-stamp conviction substantially influenced the jury's verdict. The food-stamp conviction had only modest impeachment val-

---

**8.** Mejia was sentenced on December 4, 1981, under 7 U.S.C. § 2024, which provided in part:

> (b) **Unauthorized use, transfer, acquisition, alteration, or possession of coupons or authorization cards; restitution by convicted individuals**
> (1) Subject to the provisions of paragraph (2) of this subsection, whoever knowingly ... acquires ... or possesses coupons ... in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons ... are of a value of $100 or more, be guilty of a felony
>
> 7 U.S.C. § 2024 (1988).

**9.** If Mejia had negotiated the stamps, we would have to address whether that constituted an implicit statement that he had properly acquired the stamps and was authorized to use them, and we would then have to address the legal issue of whether such negotiation should be deemed a crime of dishonesty and false statement. However, there is no evidence in the record suggesting that Mejia was convicted of negotiating (or even that he tried to negotiate) the food stamps. We therefore do not address whether negotiation would constitute a crime of dishonesty.

**10.** We therefore find *United States v. Mucci*, 630 F.2d 737 (10th Cir.1980), and the other bad check cases discussed above, distinguishable. In trading tires for the food stamps, Mejia did not misrepresent his entitlement to the food stamps or deceive the undercover Agriculture Department agents about the value of what he traded for the stamps. He simply made an (admittedly illegal) exchange. On the other hand, one who writes bad checks knowing they will be dishonored misrepresents the value of the check exchanged for services or merchandise.

**11.** Because the government did not argue that the conviction was admissible under Rule 609(a)(1) and because the district court did not admit it on that ground, we do not address whether it would have been admissible under Rule 609(a)(1).

ue, at best. Mejia's counsel brought out the conviction during direct examination of Mejia, without going into any detail. The food-stamp conviction was not drug-related or weapons-related, as were the charges in the instant case, thus reducing the potential for prejudice. The prosecutor's reference in closing arguments to Mejia's "criminal conviction" was brief and did not go into the details of the conviction. On the other hand, evidence of Mejia's guilt was considerable. We therefore find that the court's admission of the prior food-stamp conviction was harmless.

### III. FAILURE TO ASCERTAIN MEJIA'S CONSENT TO THE STIPULATION

■ Mejia also contends that the trial court erred in failing to determine on the record that Mejia understood and voluntarily consented to a stipulation entered into by his trial counsel and the government. In the stipulation, which was discussed in open court at some length and then read into the record, Mejia's trial counsel agreed that the substance found in Mejia's car on September 8, 1990, was heroin and that the weights in the laboratory report were accurate. Mejia was in court during the discussion and introduction of the stipulation. The record reflects that Mejia speaks and understands a small amount of English and that he had an interpreter present during at least part of the trial. Mejia never objected to the stipulation.

However, Mejia did not sign or in any other way expressly assent on the record to the stipulation.[12] Because Count II charged Mejia with possession of heroin with intent to distribute, possession of heroin was a fact essential to the proof of the crime. Mejia contends that because the stipulation constituted a waiver of his right under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), to have the government prove every element of the crime beyond a reasonable doubt, the court should have determined on the record whether Mejia understood and voluntarily entered into the stipulation.

Because Mejia did not object to the stipulation at trial, we review only for plain error. *United States v. Herndon*, 982 F.2d 1411, 1416 (10th Cir.1992).

■ Certainly, we would prefer that a district court address the defendant directly before accepting a stipulation that goes to one or more elements of the government's case in order to ascertain whether the defendant understood the stipulation and entered it voluntarily, and to determine whether the stipulation has a factual basis. *Herndon*, 982 F.2d at 1418. However, we have held that a district court's failure to do so does not constitute plain error, nor does it deprive the defendant of due process, at least where the defendant was present in court and represented by counsel at the time of the stipulation. *Herndon*, 982 F.2d at 1418. On the facts of this case, we hold that Mejia's due process rights to a fair trial were not violated when the district court accepted the stipulation and read it to the jury without establishing more explicitly that Mejia understood it and agreed with it.[13]

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Mejia filed a supplemental pro se brief raising a third issue: that his trial counsel was constitutionally ineffective. He asks us to stay his appeal and remand the ineffectiveness issue to the district court for factual findings on the claim.

■ As a general matter, however, this Circuit does not stay proceedings on direct appeal to permit the district court time to

---

12. Although the stipulation is signed only by the lawyers and not by Mejia personally, it does recite that "[t]he parties agree and stipulate...."

13. We note that the defendant does not assert that his stipulation was, in fact, involuntary or unknowing. *Compare Adams v. Peterson*, 968 F.2d 835, 839 (9th Cir.) (rejecting the argument that a stipulation must be accompanied by on-

the-record procedural protections that accompany a guilty plea under *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969)), *cert. denied*, —— U.S. ——, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1992), *with Adams*, 968 F.2d at 843–45 (addressing separately whether, in fact, the defendant's waiver was knowing and voluntary and holding that it was).

make factual findings on ineffective assistance claims; rather, we hold that ineffective assistance of counsel claims are ordinarily inappropriate to raise on direct appeal because the necessary fact finding can best be done on collateral attack. *See Osborn v. Shillinger,* 861 F.2d 612, 623 (10th Cir.1988); *Beaulieu v. United States,* 930 F.2d 805, 807 (10th Cir.1991). We therefore reject Mejia's contention that we should remand the case to the district court for further factual findings.

■ There are, however, rare cases where the record is sufficiently complete to enable a fair evaluation of the ineffectiveness claim on direct appeal, as where the claim is confined to matters found in the trial record or does not merit further factual inquiry. *Beaulieu,* 930 F.2d at 807. Mejia's assertion that the failure to object at trial to the prior food-stamp conviction constituted deficient performance is such a claim. To prove a claim of ineffective assistance of counsel, Mejia must show that counsel's performance was deficient and prejudicial. *United States v. Clonts,* 966 F.2d 1366, 1369–70 (10th Cir. 1992) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 691–92, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984)). Mejia has not shown that counsel's failure to object to the conviction was either. As we held earlier in this opinion, trial counsel's motion in limine was sufficient to preserve the objection to the prior conviction for appeal; thus, Mejia was not prejudiced by any waiver of the objection. Moreover, there is no suggestion that even if counsel re-raised the objection, the district court would have reversed its prior ruling and excluded the conviction. We also note that Mejia's counsel made a reasonable, tactical decision to bring the conviction in during direct examination of Mejia, presumably to "lessen the sting." Most importantly, we held today that any error in admitting the conviction was harmless. Consequently, we hold that Mejia has failed to establish that his trial counsel's failure to renew the objection was either deficient or prejudiced him. His ineffective assistance of counsel claim on this issue therefore has no merit.

■ Similarly, we have held that there was no plain error when the district court accepted the stipulation pertaining to the quantities and nature of the drugs seized. Mejia has not alleged that the stipulation was involuntary in fact. In the absence of an allegation that the stipulation was false and involuntary, Mejia does not allege an adequate predicate for an ineffective counsel claim. It is not clear what other claims of ineffective counsel Mejia may wish to raise, but we limit our holding on this appeal to a ruling that Mejia is not entitled to relief for ineffective assistance of counsel based upon the two substantive issues raised in this appeal.

## V. CONCLUSION

We AFFIRM Mejia's conviction. In doing so, we hold that the district court erred in admitting Mejia's food-stamp conviction, but that the error was harmless. We further hold that the district court did not plainly err in accepting from Mejia's counsel the stipulation as to the identity and weight of the heroin. Finally, we hold that Mejia has failed to sustain an ineffective counsel claim as to the two alleged errors asserted on direct appeal.