**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Daniel RIVERA, Defendant–Appellant.**

**No. 93–30444.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1994.

Decided Jan. 3, 1995.

tion).

Kelly J. Varnes, Burdett Law Firm, Billings, MT, for defendant-appellant.

C. Ed Laws, Asst. U.S. Atty., Billings, MT, for plaintiff-appellee.

Before, BROWNING, CANBY, Circuit Judges and HUFF *, District Judge.

HUFF, District Judge:

Daniel Rivera appeals his jury conviction for aggravated sexual abuse of a fifteen-year old girl and for being a felon in possession of a firearm. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## BACKGROUND

Daniel Rivera, a 45–year–old member of the Crow Tribe of Indians, lived in Pryor, Montana, within the Crow Indian Reservation. In the early morning hours of May 27, 1993, a 15–year–old Crow Indian girl, "Natasha",[1] went to Rivera's house with her boyfriend, Ronald Roundface. Natasha had never before met Rivera, who lived in the home with Roundface's sister.

Soon after arriving at Rivera's home, Natasha asked Roundface to give her a ride home. However, because Roundface was too

intoxicated to drive, he told her to wait until morning. Roundface then passed out on the couch and Natasha went to sleep as well.

Around 6:00 a.m., Natasha tried, without success, to awaken Roundface to take her home. Rivera offered to drive Natasha to her home, a distance of approximately two miles. Natasha agreed and got into a pickup truck with Rivera. Rivera began driving toward Natasha's house. It is at this point that their stories diverge.

According to Rivera's testimony, he and Natasha had consensual sex. He testified that in the car, he asked Natasha if she wanted to have sexual intercourse and she agreed. Rivera and Natasha then rode to the Sundance grounds just outside Pryor, Montana. While there, Rivera and Natasha engaged in consensual sexual intercourse. There were no threats, no resistance and no struggle. After intercourse, Rivera claimed Natasha sat in the pickup truck for approximately 30 minutes during which time the two discussed her child, her school and other matters. Afterwards, Rivera stated he drove to Natasha's residence, pulled into the driveway and dropped her off.

Natasha's account of the incident differed dramatically. According to her testimony, she and Rivera did not speak as the truck proceeded toward her home. When they reached Natasha's street, Rivera failed to turn down the lane which led to her home and she immediately became alarmed. Natasha asked why Rivera had not stopped, and he replied that he needed to check some minnow traps.

Natasha became frightened and once again asked Rivera to take her home. She then made numerous attempts to get out of the vehicle, but Rivera forcibly restrained her each time, pulling her back into the truck by her clothing or hair. Rivera then stopped at the Sundance Grounds and went around to the back of the truck. Fearing for her safety, Natasha armed herself with what she described as a "little metal pipe." At trial,

---

* The Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, sitting by designation.

1. Natasha's full name is withheld to protect her identity.

she identified a tire gauge found in Rivera's truck as the little metal pipe in question.

When Rivera got back into the truck, he asked Natasha to have sex with him. She refused and tried to escape from the truck. Rivera grabbed Natasha by the shoulder and pulled her by the hair back into the truck. Natasha stabbed at Rivera with the tire gauge. A struggle ensued. Rivera wrestled the gauge away from Natasha and shouted "shut the fuck up, bitch." Rivera then threatened to kill Natasha's family.

Finally, Natasha quit struggling. Rivera ordered her to take off her jeans and underpants, which she did. Rivera then disrobed and told Natasha to lay down on the seat. He penetrated Natasha's vagina digitally two times. Rivera then penetrated Natasha with his penis and had intercourse with her. After having intercourse, Rivera and Natasha put their clothes back on. Thereafter, the two engaged in "negative" conversation for approximately thirty minutes. A few minutes after 7:00 a.m., Rivera took Natasha home. Natasha immediately told her mother what had happened to her.

Natasha initially told her mother she did not wish to report the incident because she feared Rivera would retaliate against their family. She and her mother spent the morning taking care of business at the Crow Agency. Later in the day, Natasha's mother persuaded her to see a counselor. The counselor, in turn, referred her to a doctor for examination.

Dr. Carol Greimann, a physician at the hospital in Hardin, examined Natasha. At trial, Dr. Greimann testified that Natasha was distraught but able to describe what had occurred. After taking Natasha's history, Dr. Greimann physically examined Natasha and collected specimens for a rape kit. During her examination, Dr. Greimann noted the presence of non-motile sperm, which was consistent with the time reported for the rape. Based upon the history which Natasha gave, Dr. Greimann's observation of Natasha's emotional state and her physical examination of Natasha's injuries, Dr. Greimann concluded that Natasha had been forced to have intercourse against her will.

That same day, a federal warrant was issued for Rivera's arrest. On May 28, 1993, BIA criminal investigators stopped Rivera who was driving his pickup truck. Upon approaching the vehicle, the officer ordered Rivera to place his hands on the steering wheel. Rivera complied, and when the officer opened the door to the truck, he saw a pistol with the hammer cocked on Rivera's lap. Rivera was then taken into custody.

On June 17, 1993, the Grand Jury returned an Indictment charging Rivera with aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, and 2241(a), and with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Rivera pled not guilty to both counts of the Indictment and was tried before a jury on August 30, 1993. The jury returned a verdict of guilty on both counts the next day.

On November 5, 1993, the court sentenced Rivera at level 37, Criminal History Category VI. Rivera received a sentence of 400 months on Count I and 120 months on Count II, to be served concurrently with Count I. Rivera then timely filed this appeal.

## DISCUSSION

On appeal, Rivera challenges his conviction for aggravated sexual assault only. He does not challenge his conviction for unlawful possession of a firearm and does not contest the district court's computation of sentence.

Rivera contends that the district court erred (1) in denying his motion for mistrial based on improper bolstering of testimony; (2) in permitting Natasha's mother to testify regarding her daughter's statements; (3) in refusing to instruct the jury that sexual abuse and sexual abuse of a minor are lesser included offenses of aggravated assault; and (4) in refusing to instruct the jury that consent was a defense.

### 1. Motion for Mistrial

At the close of the government's case-in-chief, Rivera moved the district court to order a mistrial based on the testimony of attending physician Dr. Carol Greimann. Rivera argued Dr. Greimann improperly bolstered Natasha's prior testimony by testify-

ing that, in her opinion, Natasha did not fake the rape.

■ Rivera's objection to Dr. Greimann's testimony was made for the first time in his motion for mistrial. At no time during the direct, cross or redirect examination of Dr. Greimann did Rivera object to her testimony on the grounds that she was bolstering a witness. Failure to make a timely objection constitutes a waiver of that objection. *See* FED.R.EVID. 103(a)(1).[2] Furthermore, in *United States v. Gomez–Norena*, 908 F.2d 497, 500 (9th Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990), this court stated the rule that "a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, ... but also by making the *wrong* specific objection." (citations omitted) (emphasis in original). *Id.* at 500.

■ In the present case, Rivera objected to the testimony as without sufficient foundation and as "totally subjective." He failed to object on "improper bolstering" grounds. Accordingly, this court reviews the district court's admission of the testimony for "plain error." A plain error is a highly prejudicial error affecting substantial rights, and is found only in exceptional circumstances. *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989).

■ Expert witnesses may testify if they are qualified and "if their testimony will assist the trier of fact in understanding the evidence or determining a fact in issue." *United States v. Binder*, 769 F.2d 595, 602 (9th Cir.1985), *cert. denied*, 484 U.S. 1073, 108 S.Ct. 1044, 98 L.Ed.2d 1007 (1988). However, "[e]xpert testimony may not appropriately be used to buttress credibility." *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir.1988). More particularly, "[an] expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a

witness' credibility." *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir.1989).

■ Here, Dr. Greimann's testimony provided the court with pertinent medical information regarding Natasha's physical condition following the incident with Rivera. Such testimony is proper and helpful to the jury in making a determination of whether sexual intercourse was consensual or nonconsensual, which was an issue in this case. *See United States v. Wesson*, 779 F.2d 1443, 1444 (9th Cir.1986) (allowing doctor's testimony that alleged rape victim's injuries not consistent with consensual intercourse to "aid[ ] the jury in determining the credibility of [the alleged victim]'s claim that the intercourse was nonconsensual").

■ The statements which Rivera challenges as bolstering constituted rebuttal testimony which the government elicited during its redirect examination of Dr. Greimann. The redirect questioning followed Rivera's cross-examination in which Rivera attempted to demonstrate that Natasha provided a false history of the incident to Dr. Greimann and thereby "fooled" her into making an incorrect diagnosis of nonconsensual intercourse.

Because Rivera "opened the door" to the question of the accuracy of Dr. Greimann's diagnosis, the trial court acted properly in allowing Dr. Greimann to rebut the inference on redirect. *See generally United States v. Hegwood*, 977 F.2d 492, 496 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2348, 124 L.Ed.2d 257 (1993) ("[W]hen the defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into that issue.") Admission of Dr. Greimann's testimony did not constitute plain error and we find that the district court properly denied defendant's motion for mistrial.

---

**2.** Rule 103(a)(1) provides:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion

to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.....

FED.R.EVID. 103(a)(1)

## 2. Admission of Statements Made to Victim's Mother

■ Defendant contends that the court erred in admitting statements made by the victim to her mother. Admissions of testimony are reviewed for an abuse of discretion. *United States v. Cowley*, 720 F.2d 1037, 1040 (9th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984).

At trial, Natasha's mother testified that upon returning home, her daughter said, "Mom, that man raped me." After objections by the defendant were overruled, Natasha's mother further testified that her daughter said to her "that man raped me, and he said if I tell anybody, he's going to kill me, he's going to kill my family."

Rivera argues that these statements do not fall under the excited utterance exception to the rule against hearsay. *See* FED.R.EVID. 803(2).[3] He points out that Natasha's statements to her mother occurred at least one-half hour after intercourse occurred and as such cannot constitute an excited utterance. The court disagrees.

"The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of rule 803(2)." *United States v. Iron Shell*, 633 F.2d 77, 85 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *see also* FED.R.EVID. 803 advisory committee's note. In *Iron Shell*, the court held that under the excited utterance exception, it was not an abuse of discretion to admit a police officer's testimony as to what a nine-year-old victim said following sexual assault—even though those statements were made between 45 minutes and one hour and 15 minutes after the assault. 633 F.2d at 86. As the Fourth Circuit has observed, "time lapse to be considered in [child sexual abuse] cases is not simply the time between the abuse and the declaration. Rather, courts must also be cognizant of the

child's first real opportunity to report the incident." *Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir.1988).

■ Rather than focusing solely on the time a statement was made, we consider other factors, including the age of the declarant, the characteristics of the event and the subject matter of the statements. *Iron Shell*, 633 F.2d at 86. Each of those factors suggests Natasha was still under the stress or excitement of the rape when she made the statements which Rivera challenges on appeal.

■ First, Natasha was only fifteen when the rape occurred; Rivera was forty-five. Second, during the assault, Natasha had been subjected to physical abuse and death threats made against her and her family. Although a half hour had elapsed from the time of the assault to her release, Natasha made the statements *immediately* after Rivera returned her to her mother. Further, her mother testified that Natasha was crying and in a semi-hysterical state at the time she made the statements. Third and finally, those statements concerned the ordeal Natasha had just experienced.

Accordingly, in light of Natasha's youthful age, the subject matter of the statements and the characteristics of the event, the district court did not abuse its discretion in determining she was still under the stress or excitement of the rape at the time she made the challenged statements.

## 3. Jury Instruction on Lesser Included Offenses

Rivera next argues the district court erred in refusing to instruct the jury that sexual abuse, *see* 18 U.S.C. § 2242(1), and sexual abuse of a minor, *see* 18 U.S.C. § 2243(a), are lesser included offenses of aggravated sexual abuse. *See* 18 U.S.C. § 2241(a).

---

**3.** Rule 803(2) provides:
  The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

  (2) … A statement relating to a startling event or condition made while the declarant

  was under the stress of excitement caused by the event or condition.
  FED.R.EVID. 803(2)

"A defendant is entitled to a lesser included offense instruction when the elements of the lesser offense are a subset of the charged offense and a factual basis supports the instruction. In determining whether a lesser offense is a subset of the greater, the comparison does not depend upon the facts of the particular case. Rather, the elements of each crime must be compared using the text of the statutes involved without regard to the 'inferences that may be drawn from evidence introduced at trial.'" *United States v. Sneezer,* 983 F.2d 920, 923 (9th Cir.1992) (quoting *Schmuck v. United States,* 489 U.S. 705, 720, 109 S.Ct. 1443, 1452–53, 103 L.Ed.2d 734 (1989)).

### a. Sexual abuse as a lesser included offense

In *Sneezer,* this court explicitly addressed the question of whether sexual abuse is a lesser included offense of aggravated sexual abuse. 983 F.2d at 923. We held it was not. "A textual comparison of 18 U.S.C. §§ 2241(a) and 2242(1) indicates that § 2242(1) is not a subset of § 2241(a)". *Id.* Accordingly, the court finds Rivera's argument without merit.

### b. Sexual abuse of a minor as a lesser included offense

Rivera also argues the trial court erred in refusing to instruct the jury that sexual abuse of a minor is a lesser included offense of aggravated sexual assault. The court rejects this argument as well.

While this circuit has yet to consider the issue, the Eighth Circuit in *United States v. Amos,* 952 F.2d 992 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1774, 118 L.Ed.2d 432 (1992), applied the elements test to conclude sexual abuse of a minor is *not* a lesser included offense of aggravated sexual assault.

Like Rivera, Amos argued the district court erred in refusing to instruct the jury on sexual abuse and sexual abuse of a minor as lesser included offenses of aggravated sexual abuse. The *Amos* Court rejected his argument, holding, "[a] review of the elements of each offense demonstrates sexual abuse and sexual abuse of a minor include distinct ele-

ments not included in aggravated sexual abuse by force." *Id.* at 994. The Court reasoned, "[u]nlike sexual abuse, aggravated sexual abuse by force can be committed without the kind of threat or fear required by 18 U.S.C. § 2242(1). Thus the elements of sexual abuse are not a subset of the elements of aggravated sexual abuse by force." *Id.* The Court continued, "[l]ikewise, it is possible to commit aggravated sexual abuse by force without committing sexual abuse of a minor. Sexual abuse of a minor includes age elements not required for aggravated sexual abuse by force." *Id.*

■ We agree with the Eighth Circuit's disposal of this issue because it is consistent with our decision in *Sneezer, supra.* In short, a textual comparison of 18 U.S.C. §§ 2241(a) and 2243(a) reveals that sexual abuse of a minor includes age elements not required for aggravated sexual abuse. *See Sneezer,* 983 F.2d at 923 ("elements of each crime must be compared using the text of the statutes involved"). Because the elements of the crime of sexual abuse of a minor are not a subset of the crime of aggravated sexual abuse, *see id.,* the district court did not err in refusing Rivera a lesser included offense instruction.

### 4. Consent as a Defense

Finally, Rivera argues the district court erred by refusing to instruct the jury that consent was a complete defense to the crime of aggravated sexual abuse. In particular, Rivera argues the district court erred by giving Instruction No. 13 and refusing to give Defense Instructions Nos. 6 and 12.

Instruction No. 13 reads:

You have received instructions on the essential elements the United States must prove in order to establish the offense charged in the Indictment. The United States is not required to show that the victim did not consent to the sexual act, nor is the prosecution required to show that the victim resisted.

Proposed Defense Instruction No. 6 reads:

Consent to sexual intercourse is a total defense to the charges against Defendant

of aggravated sexual abuse and sexual abuse.

Proposed Defense Instruction No. 12 reads:

Whether consent to intercourse was given rests on whether an alleged victim of ordinary resolution would not offer resistance or that because of reasonable fear of harm, a woman of ordinary resolution would not offer resistance.

██ The legislative history underlying the statute reveals that "[l]ack of consent by the victim is not an element of the offense, and the prosecution need not introduce evidence of lack of consent or of victim resistance." H.REP.No. 594, 99th Cong., 2d Sess. 14, *reprinted in* 1986 U.S.C.C.A.N. 6186, 6194. The history also notes that "offenses set forth in [Sexual Abuse Act] do not incorporate the traditional rape law doctrine of 'consent'." *Id.* at 11, reprinted in 1986 U.S.C.C.A.N. at 6191. In fact, the intent of the Act was to "modernize[ ] and reform[ ] Federal rape provisions by ... defining the offenses so that the focus of a trial is upon the conduct of the defendant, instead of upon the conduct or state of mind of the victim." *Id.* at 10, reprinted in 1986 U.S.C.C.A.N. at 6190. In light of this history, Proposed Defense Instruction No. 12 is clearly a misstatement of the law, while Defendant's Proposed Defense Instruction No. 6 arguably is.

The court instructed the jury that to find Rivera guilty of aggravated sexual abuse, they had to conclude, *inter alia*, that he caused Natasha "to engage in a sexual act by: (a) the use of force against Natasha; or (b) by threatening or placing her in fear that any person will be subjected to death or serious bodily [injury]." (ER 19). Rivera's defenses were that he did not use force and that Natasha consensually engaged in intercourse rather than out of fear.

██ The district court's instructions adequately covered those theories. *See United States v. Lopez*, 885 F.2d 1428, 1434 (9th Cir.1989), *cert. denied*, 493 U.S. 1032, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990) (not error to reject theory-of-the-case instruction if other instructions in their entirety cover the defense theory). The district court instruct-

ed the jury to find Rivera guilty only if they concluded he used force or threats to engage in intercourse with Natasha. If he did not (i.e., Natasha consented), they were to find him not guilty. " 'So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion.' " *Id.* (quoting *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985)). Accordingly, the district court did not err in refusing Rivera's proposed jury instructions regarding resistance and consent.

## CONCLUSION

In sum, we hold that the district court did not err in denying the motion for mistrial; in permitting the victim's mother to testify regarding her daughter's statements; in refusing to instruct the jury that sexual abuse and sexual abuse of a minor are lesser included offenses; and, in refusing to instruct on consent as a defense. Accordingly, we affirm the district court's judgment.