**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 26 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

RICHARD KING, JR.,

     Defendant-Appellant.

No. 99-2363
(D. N.M.)
(D.Ct. No. CR-98-933-MV)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA, BALDOCK,** and **BRORBY,** Circuit Judges.

_____

     Richard King, Jr. appeals his convictions on two counts of sexual abuse of

a minor in violation of 18 U.S.C. § 2243(a), by means of oral and anal copulation

as defined in 18 U.S.C. § 2246(2)(A) and (B).[1] The district court had jurisdiction

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, _res judicata_ and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] 18 U.S.C. § 2243(a) criminalizes the sexual abuse of a minor, and provides:

     Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who –
          (1) has attained the age of 12 years but has not attained the age

in this case under 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

---

of 16 years; and
    (2) is at least four years younger than the person so engaging; or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

The definition section of the sexual abuse chapter of the United States Code is found at 18 U.S.C. § 2246. The term "sexual act" is defined as:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;
(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus.

18 U.S.C. § 2246(2)(A), (B).

These provisions were applicable to Mr. King pursuant to 18 U.S.C. § 1153(a), which provides:

Any Indian who commits against the person or property of another Indian or other person ... an assault against an individual who has not attained the age of 16 years, ... within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
...

I.    BACKGROUND

The events at issue in this case occurred on the Navajo Reservation in New Mexico. Mr. King and the victim, Michael W., are residents of Shiprock, New Mexico, which is located on the Navajo Reservation, and both are members of the Navajo Nation. Michael has a learning disability for which his family receives Social Security benefits. At the time of the incident that forms the basis of Mr. King's convictions, Michael was fifteen years old and Mr. King was twenty-five years old.

Michael considers Mr. King his uncle. In actuality, Michael's mother was once married to Mr. King's brother, who is now involved in a relationship with Michael's sister. Michael lives with his mother and one of his brothers in one of five homes located in close proximity to one another and occupied by Michael's extended family. Michael and Mr. King grew up together in this extended family compound. Although Mr. King did not live in the compound at the time of the assault, his mother's trailer was parked just across from Michael's trailer home, and Mr. King spent a considerable amount of time in the compound area. This family compound became the site of a family tragedy. The testimony presented at trial is briefly summarized as follows.

Michael was drinking beer with some friends late in the afternoon of October 23, 1998. At about 5:30 p.m., Michael returned to his home to change clothes and pick up a radio. No one else was home. Shortly after Michael arrived at his home, Mr. King entered the trailer without knocking, as was frequently his practice. Michael testified Mr. King approached him, and asked Michael if he wanted to have sex. Mr. King then pulled off his pants and underwear and asked Michael to do the same. Michael complied with this request, and Mr. King then made Michael bend over and pushed his penis into Michael's anus. Michael got scared, pulled up his pants and left the home. Michael then went back to his friends and told them Mr. King had raped him. Michael drank more beer and passed out in the back of his friend's truck.

Michael's mother was expecting Michael to meet her at 11:30 p.m. that night when she finished her shift at a restaurant. When Michael did not show up, she became concerned and went looking for him, eventually finding him around midnight. She assisted Michael out of the truck and drove him home. When they got home, Michael started fighting with his brother. After his mother interceded and stopped the fight, and the older son left the room, Michael told her Mr. King had tried to rape him.

4

Michael's mother took him to the emergency room where Patricia Smith, the emergency room nurse, interviewed him. Michael was still intoxicated when he arrived at the hospital. Nurse Smith recorded Michael's statement in her report as follows: "My uncle, Richard King tried to rape me. He took my clothes off. He wanted me to suck his dick. He tried to put it in. I don't know how my lip got hurt." Michael repeated these accusations to Dr. Water, the doctor who examined him in the emergency room. Dr. Water discovered physical evidence of anal penetration and noted Michael's throat was swollen, red, irritated, and there was some white mucus-like material at the back of his throat. However, no semen was found in his throat. Dr. Water testified Michael tried to induce vomiting while in the emergency room by putting his finger down his throat. Although the redness and irritation of Michael's throat could have been caused by this attempt to induce vomiting, Dr. Water testified this behavior was consistent with someone who has been forced to perform oral copulation. Dr. Water also testified Michael told her the injuries to his face occurred while he was being "forced." Both Dr. Water and Nurse Smith testified Michael was upset and angry while he was in the hospital.

Michael was discharged from the hospital at 4:00 a.m. At trial, Michael could not remember what he had said to the hospital personnel concerning the

5

oral copulation. He stated that after drinking the second quart of beer, he blacked out and could not remember what he told his mother, brother and sister when he got home. Michael also testified concerning a prior encounter between Mr. King and Michael when Mr. King propositioned Michael for oral sex.

The jury acquitted Mr. King of the counts alleging aggravated sexual abuse (Counts I and II), but convicted him of two counts of sexual abuse of a minor in violation of 18 U.S.C. § 2243(a), by means of anal penetration (Count III, 18 U.S.C. § 2246(2)(A)) and oral copulation (Count IV, 18 U.S.C. § 2246(2)(B)). Mr. King filed a timely appeal. On appeal, Mr. King asserts the evidence was insufficient to convict him of Count IV, sexual abuse of a minor through oral copulation, and thus the district court erred by denying his motion for judgment of acquittal. Mr. King also contends the trial court erred by allowing Michael's mother to testify concerning Michael's statement to her accusing Mr. King of rape, by allowing Dr. Water and Nurse Smith to testify concerning Michael's statements to them in the emergency room, and by allowing Michael to testify about the prior incident when Mr. King asked Michael for sex.

6

II    DISCUSSION

A.    Sufficiency of the Evidence

We first address Mr. King's argument concerning the sufficiency of the evidence to sustain his conviction for sexual abuse of a minor by means of oral copulation, and the district court's denial of his motion for judgment of acquittal.

> Sufficiency of the evidence to support a jury's verdict is a legal issue that is reviewed de novo. On appeal, we ask only whether taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. In conducting this review we may neither weigh conflicting evidence nor consider the credibility of witnesses. It is for the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence and draw inferences from the facts presented. When reviewing the denial of a motion for judgment of acquittal based on insufficient evidence, this court conducts the same analysis, reviewing the judgment of the district court de novo.

*United States v. Jackson*, 213 F. 3d 1269, 1283 (10th Cir. 2000) (quotation marks and citations omitted).

In concluding the evidence was sufficient for the jury to find Mr. King engaged in oral copulation with Michael, the district court noted Michael's throat was irritated when he was examined at the hospital on the night in question. The district court also pointed out Michael told the examining physician and nurse Mr. King forced him to engage in oral copulation. The district court concluded this

7

evidence, "as well as the other evidence presented at trial, [was] sufficient to allow a reasonable jury to conclude, beyond a reasonable doubt, that [Mr. King] had engaged in ... oral copulation with [Michael]." We agree.

In arguing the evidence on this count was insufficient, Mr. King focuses on the fact Michael did not mention oral sex during his trial testimony. He asserts the medical evidence was inconclusive and argues Michael's statements to medical personnel were unreliable because he was so intoxicated at the time he made them. He also asserts the physical evidence was inconclusive. However, Mr. King had the opportunity to cross-examine the medical personnel concerning Michael's level of intoxication at the time Michael made his accusations concerning oral sex. It was for the jury to decide whether Michael's statements at the hospital were worthy of credence. Mr. King likewise was able to cross-examine Dr. Water concerning the physical evidence of oral copulation. Although the physical evidence did not conclusively prove Michael had engaged in oral sex, Dr. Water did not rule out the possibility these injuries were due to oral copulation. Furthermore, we do not consider Michael's failure to testify concerning oral copulation to be fatal to the government's case. *Cf. United States v. Beers*, 189 F.3d 1297, 1301-02 (10th Cir. 1999) (holding there was sufficient evidence to sustain a conviction of kidnaping where the child victim was not

8

called to testify concerning his willingness to go with the defendant, but the testimony of other witnesses indicated the victim was unwilling to accompany the defendant), *cert. denied*, 120 S. Ct. 1696 (2000). Viewing the evidence in the light most favorable to the government, we conclude the evidence was sufficient to support the jury's verdict.

### B. Evidentiary Issues

Mr. King contends the district court erred by admitting Michael's out-of-court statements to his mother and to medical personnel, and Michael's testimony concerning a prior incident when Mr. King asked Michael for oral sex. "We review the admission of evidence at trial for abuse of discretion." *United States v. McHorse*, 179 F.3d 889, 901 (10th Cir.), *cert. denied*, 120 S. Ct. 358 (1999). "Because hearsay determinations are particularly fact and case specific," our review of those decisions is especially deferential. *United States v. Trujillo*, 136 F.3d 1388, 1395 (10th Cir.), *cert. denied*, 525 U.S. 833 (1998). Nevertheless, when evaluating the district court's interpretation of the rules of evidence, we exercise de novo review. *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998).

1.    Admission of Statements Made to Victim's Mother

Mr. King contends the district court violated his Sixth Amendment right to confront the witnesses against him by allowing Michael's mother to testify concerning Michael's out-of-court statement accusing Mr. King of attempted rape. The district court admitted the testimony pursuant to Federal Rule of Evidence 803(2), the exception to the hearsay rule for "excited utterances." The "admission of a hearsay statement does not violate the [Sixth Amendment] Confrontation Clause 'if it bears adequate "indicia of reliability."'" *Paxton v. Ward*, 199 F.3d 1197, 1207 (10th Cir. 1999) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)). "'Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.'" *Id.* (quoting *Roberts*, 448 U.S. at 66). *See also United States v. Gomez*, 191 F.3d 1214, 1220 (10th Cir. 1999) ("Hearsay statements are deemed sufficiently reliable to allow their admission without the benefit of cross-examination when the statements (1) 'fall[] within a firmly rooted hearsay exception,' or (2) contain 'adequate indicia of reliability.'" (Quoting *Roberts*, 448 U.S. at 66)). The Federal Rules of Evidence provide such a firmly rooted exception to the hearsay rule for an "excited utterance," defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). *See also White v. Illinois*, 502

10

U.S. 346, 356 & n.8 (1992); *Paxton*, 199 F.3d at 1207. Therefore, if the district court correctly categorized Michael's statement as an excited utterance, Mr. King's Sixth Amendment right to confrontation was not violated. We now turn to our analysis of whether the district court correctly determined this statement qualified as an excited utterance.

Mr. King contends Michael's statement to his mother does not qualify as an "excited utterance" under Rule 803(2) because Michael had ample time for reflection before he made the statement, and by the time he made the statement the stress of the assault had dissipated. In support of this argument, Mr. King points out that after the incident at his house, Michael went back to his friends, continued drinking, passed out for at least an hour, and seven hours passed before he told his mother Mr. King had tried to rape him.

In denying Mr. King's motion in limine to exclude the statement, the district court reasoned Michael's statement to his mother qualified as an excited utterance because, despite the delay between the incident and the statement, Michael "was still under the influence of the excitement from the event." In support of this conclusion, the district court cited Michael's testimony at the hearing on the motion in limine, his age, the fact he made the statement upon his

11

first contact with his mother after the incident occurred, and the fact he made the statement after consuming alcohol when "one might have expected the effect of alcohol to cause him to not discuss it." In its memorandum opinion denying Mr. King's motions for judgment of acquittal and for a new trial, the district court repeated these reasons for allowing the statement, and in addition cited Michael's agitated state, Michael's limited mental abilities, and the startling nature of the event.

We find no fault with the reasoning of the district court, and conclude it did not err by determining Michael's statement was made while he was still under the stress of the incident. Although there was a lapse of time between the incident and Michael's statement to his mother, this does not dispose of the issue. *See United States v. Farley*, 992 F.2d 1122, 1123, 1126 (10th Cir. 1993) (noting a statement by a young child made the day following molestation could have been admitted as an excited utterance where the child was described as frightened and on the verge of tears at the time of the disclosure); *see also United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995) (holding a statement made a half hour after an assault occurred qualified as an excited utterance and stating "[r]ather than focusing solely on the time a statement was made, we consider other factors, including the age of the declarant, the characteristics of the event and the subject

matter of the statements."); *United States v. Iron Shell*, 633 F.2d 77, 85-86 (8th Cir. 1980) (holding the amount of time between the startling event and the statement is only one factor to be weighed by the court in determining whether the excited utterance exception to the hearsay rule applies), *cert. denied*, 450 U.S. 1001 (1981). Rule 803(2) rests on the theory the agitated mind is much less likely to engage in conscious fabrication than is the reflective mind. *See* Fed. R. Evid. 803(2) advisory committee's note; *see also Paxton*, 199 F.3d at 1209 (quoting *Idaho v. Wright*, 497 U.S. 805, 820 (1990)). There is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance. "[T]he standard of measurement is the duration of the state of excitement." Fed. R. Evid. 803(2) advisory committee's note. "[T]he character of the transaction or event will largely determine the significance of the time factor." *Id*. Thus, in deciding whether a statement qualifies as an excited utterance, the court may take into account the nature of the stressful event, the age of the declarant, and other factors indicating the declarant was still under the stress of the incident when he or she made the statement. *See Farley*, 992 F.2d at 1126; *see also Rivera*, 43 F.3d at 1296.

In this case, the trauma was severe. Michael was sodomized by his uncle. It is reasonable to believe the stress of this event could last several hours, and the

record supports the court's finding that it did. Several witnesses testified Michael was agitated for hours after the event. Although Michael continued drinking and passed out for one hour after the incident, it is reasonable to assume a person might drink to the point of passing out after such a traumatic event, and wake up still upset and agitated. Moreover, during the time he was intoxicated, it is unlikely Michael was engaging in conscious fabrication. While he was passed out, Michael was certainly not reflecting upon the incident. Furthermore, we conclude the district court did not err by taking into account Michael's age and limited mental abilities. It is proper for a court to consider the age of the declarant when determining whether a statement qualifies as an excited utterance under Rule 803(2). *See Farley*, 992 F.2d at 1126; *see also Rivera*, 43 F.3d at 1296; *Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir. 1988); *Iron Shell*, 633 F.2d at 86. Although Michael was older than many child sexual abuse victims, he was still only fifteen years old at the time of the assault. *See Rivera*, 43 F.3d at 1296 (holding the fifteen-year-old rape victim's statement to her mother one-half hour after the rape occurred qualified as an excited utterance, and taking into consideration the age of the victim). In addition, Michael has a learning disability. Because the district court had an opportunity to observe Michael as he testified at the hearing on the motion in limine and at trial, we defer to the court's assessment of Michael's mental abilities. We conclude the court did not err by

14

comparing the present case, involving a fifteen-year-old with a learning disability, to those cases extending the permissible length of time between the incident and the statement when the declarant is a young child.

Even though Michael made the statement hours after the assault, we conclude the district court did not err by determining Michael was still under the stress of the event when he told his mother Mr. King had tried to rape him. Therefore, the district court properly determined the statement was an excited utterance as defined by Rule 803(2). Because Rule 803(2) codifies a firmly rooted exception to the hearsay rule, we infer its trustworthiness and conclude Mr. King's rights under the Sixth Amendment were not violated by the admission of Michael's out-of-court statement to his mother. Furthermore, counsel was able to cross-examine Michael concerning his statement to his mother. Thus, there was no violation of Mr. King's right to confrontation under the Sixth Amendment. *See United States v. Owens*, 484 U.S. 554, 560 (1988); *McHorse*, 179 F.3d at 900; *Carson v. Collins*, 993 F.2d 461, 464 (5th Cir.), *cert. denied*, 510 U.S. 897 (1993).

2.  Admission of Statements Made to Medical Personnel

Mr. King similarly contends the district court erred by allowing Dr. Water

15

and Nurse Smith to testify concerning Michael's statements identifying Mr. King as his assailant. Mr. King argues the court erred by admitting these statements under the exception to the hearsay rule set forth in Federal Rule of Evidence 803(4), and also asserts this violated his Sixth Amendment right to confront the witnesses against him. As stated in the previous section, Mr. King's rights under the Sixth Amendment were not violated by admitting this testimony because Michael testified at trial and defense counsel had an opportunity to cross-examine him concerning all the out-of-court statements at issue. *See McHorse*, 179 F.3d at 900. Furthermore, Rule 803(4) codifies a firmly rooted exception to the hearsay rule. Thus, evidence properly admitted under this exception carries sufficient indicia of reliability to satisfy the confrontation clause. *McHorse*, 179 F.3d at 900-01; *see also White*, 502 U.S. at 356 & n.8. After reviewing the evidence, we conclude the trial court did not err by admitting Michael's out of court statements to medical personnel under the exception to the hearsay rule set forth in Fed. R. Evid. 803(4).

Federal Rule of Evidence 803(4) excepts from the hearsay rule "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably

pertinent to diagnosis or treatment." Fed. R. Evid. 803(4). Mr. King objected to Dr. Water's testimony concerning Michael's identification of Mr. King as the perpetrator of the attack on the grounds the statement was not used to diagnose or treat Michael. The district court overruled this objection, concluding the evidence was relevant to Michael's treatment. However, Mr. King did not object on the basis of hearsay to the out-of-court statements Michael made to Nurse Smith.[2] Because Mr. King failed to contemporaneously object to this testimony at trial he has not properly preserved this argument for review. *See* Fed. R. Evid. 103(a)(1); *United States v. Hill*, 60 F.3d 672, 675 (10th Cir.), *cert denied*, 516 U.S. 970 (1995). Absent a contemporaneous objection at trial, we review the admission of Mr. King's statement to Nurse Smith for plain error only. *See Hill*, 60 F.3d at 675; Fed. R. Evid. 103(a)(1) & (d). We find no error in the admission of either Dr. Water's testimony or that of Nurse Smith.

---

[2] The only objection Mr. King raised during Nurse Smith's testimony on direct examination was in response to the court allowing her to read from the report she wrote the night Michael was examined after the assault. The report contained Michael's statement that Mr. King "tried to rape me. He took my clothes off. He wanted me to suck his dick. He tried to put it in. I don't know how I got my lip hurt." Defense counsel's objection was as follows: "Your honor, I'm going to object again. This has already been admitted into evidence. I believe this witness can testify as to what may be in the exhibit and doesn't need to read it. Obviously the jury can read it." The court overruled this objection, and Nurse Smith continued to read her report without objection.

On appeal, Mr. King draws our attention to the plain language and the legislative history of Rule 803(4), arguing the identity of Michael's attacker was not pertinent to his treatment. We disagree. In general, a victim's statement to a physician identifying the person responsible for the victim's injuries is not considered necessary for either accurate diagnosis or effective treatment, and is not admissible under Rule 803(4). *See United States v. Joe*, 8 F.3d 1488, 1494 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184 (1994). However, in domestic sexual assault cases, the identity of the abuser is almost always reasonably pertinent to treatment, even in cases involving adults. *Id*. at 1494-95. The exception to the general rule is based on the theory that when the abuser is a member of the victim's family or household, the physician must know the identity of the perpetrator in order to assess the emotional damage inflicted and in order to suggest strategies for the victim to avoid future harm at the hands of the abuser. *Id. See also United States v. Tome*, 61 F.3d 1446, 1450 (10th Cir. 1995). In *United States v. Pacheco*, 154 F.3d 1236 (10th Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999), we held the identity of the perpetrator, the victim's mother's boyfriend, was pertinent to medical treatment because the mother's boyfriend, although not a member of the victim's immediate family, had an "intermittent relationship" with the victim's mother, and the victim occasionally resided in the same house as the perpetrator. *Id.* at 1241-42.

18

In the present case, the record reveals Mr. King was a frequent visitor to Michael's home, was a member of Michael's extended family, resided at times in the family compound, and had a long-term close relationship with Michael. We have no problem affirming the district court's determination Mr. King's relationship to Michael "was such that his identity as [Michael's] abuser was reasonably pertinent to [his] course of treatment." *Pacheco*, 154 F.3d at 1242.[3] We conclude the testimony by Dr. Water and Nurse Smith concerning Michael's identification of Mr. King as the perpetrator of the assault was properly admitted under Rule 803(4).

3.     Evidence of an Uncharged Prior Attempted Sexual Assault

We now turn to Mr. King's argument the district court erred by allowing Michael to testify concerning a prior incident when Mr. King allegedly asked Michael for oral sex. After conducting a hearing on the admissibility of the

---

[3] Mr. King also argues the district court erred in making this determination because neither Nurse Smith nor Dr. Water arranged for Michael to have counseling after the incident or considered the appropriateness of Michael's return to his home. However, Dr. Water testified she did make an appointment for Michael to visit a mental health professional. She also testified hospital protocol required her to find out if the perpetrator is a relative or someone who lives in the house or frequents the house in order to take steps to protect the child. Whether or not Dr. Water took further steps to protect Michael is irrelevant to the issue of the admissibility of the statement. In the present case, the statement identifying Mr. King as the perpetrator was pertinent to Michael's treatment.

19

proffered evidence, the district court determined Michael's testimony concerning the prior incident was admissible pursuant to Fed. R. Evid. 413. Although Mr. King filed a motion in limine asking the court to exclude the evidence of the prior incident, and his counsel argued against the admissibility of the evidence at the hearing on the motion in limine, Mr. King's counsel did not object to the testimony at trial.[4] Thus, our review is for plain error only. *Hill*, 60 F.3d at 675; Fed. R. Evid. 103(a) & (d). "We reverse only if admitting the statement placed the underlying fairness of the entire trial in doubt, or if it affected one of the

---

[4] At oral argument, Mr. King's counsel asserted he made a contemporaneous objection to Michael's testimony at trial. However, our review of the trial transcript reveals no such contemporaneous objection to Michael's testimony describing the prior incident. A motion in limine preserves an objection for appellate review "when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge." *United States v. Mejia-Alarcon*, 995 F.2d 982, 987 (10th Cir.), *cert. denied*, 510 U.S. 927 (1993). We conclude this issue is not the type that could be finally decided in a pretrial hearing. Before evidence can be admitted under Rule 413, the trail court must determine whether the prejudicial effect of the evidence is substantially outweighed by its probative value. *Guardia*, 135 F.3d at 1330 (applying the Rule 403 balancing test to evidence to be admitted under Rule 413). Thus, any final decision as to the admissibility of Rule 413 evidence depends on the outcome of the Rule 403 balancing test. This is a very fact-specific determination which could only properly have been made in light of the other evidence brought forth at trial. *See Mejia-Alarcon*, 995 F.2d at 987 & n. 2; *Green Constr. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1013 (10th Cir. 1993). Consequently, Mr. King's motion in limine did not preserve his objection to the Rule 413 evidence on appeal, and we apply the plain error standard of review.

defendant's substantial rights." *Hill*, 60 F.3d at 675 (citations omitted). We conclude the admission of evidence concerning the prior act, if error, does not warrant reversal under the plain error standard.

Michael testified that in 1995 he was walking back home from the restaurant where his mother worked when he saw Mr. King sitting in his car. Mr. King called Michael over to his car and told him to get into the car. Michael complied, and Mr. King asked him to "suck his cock and lick his rear end." Michael attempted to leave the car, and Mr. King grabbed his arm and told him to stay for a couple of minutes. Michael stayed in the car for about half an hour after the  proposition. During this time, Mr. King provided Michael with marijuana, which they smoked together. Mr. King did not touch Michael again during that period, and made no other improper suggestions.

Federal Rule of Evidence 413 provides for the admission of "evidence of similar crimes in sexual assault cases." Fed. R. Evid. 413.[5] Such uncharged conduct is admissible under Rule 413 if the following requirements are met:  1)

---

[5]  Federal Rule of Evidence 413 provides:  "In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 413(a).

21

the defendant is accused of an offense of sexual assault; 2) the proffered evidence is evidence of the defendant's commission of sexual assault; and 3) the proffered evidence is relevant. *Guardia*, 135 F.3d at 1328. The definition of sexual assault for purposes of Rule 413 includes an attempted sexual assault. Fed. R. Evid. 413(d)(5). Before it allows evidence of a prior sexual assault into a trial, "[t]he district court must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred." *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir.), *cert. denied*, 525 U.S. 887 (1998).

The district court concluded the government could establish by a preponderance of the evidence Mr. King committed the offense of attempted sexual abuse of a minor. The court determined the proposition, coupled with Mr. King's attempt to physically prevent Michael from exiting the car, constituted a substantial step in the commission of the offense, and therefore, the second part of the test for admission of testimony under Rule 413 was satisfied. The court further determined the evidence was relevant and the third step was satisfied because the victim and the perpetrator were the same in the prior incident, the conduct was similar to that charged, and the incident was relatively close in time to the events charged.

22

In order to prove it was more likely than not Mr. King committed the offense of an attempted sexual assault under Rule 413(d)(5), the prosecution had to show Mr. King possessed the criminal intent to engage in the criminal conduct and that he took a "substantial step" toward the commission of the crime. *United States v. Moore*, 198 F.3d 793, 797 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1693 (2000). Mr. King concedes his solicitation of oral sex satisfies the intent aspect of the alleged attempted sexual assault, but contends grabbing Michael's arm to keep him in the car when he tried to leave was not a substantial step toward the commission of the crime of sexual abuse.

"[A] substantial step must be conduct that is 'strongly corroborative of the firmness of the defendant's criminal intent.'" *United States v. Savaiano*, 843 F.2d 1280, 1296 (10th Cir.) (quoting *United States v. Prichard*, 781 F.2d 179, 181 (10th Cir. 1986)), *cert. denied*, 488 U.S. 836 (1988). Conduct may amount to a substantial step if it is "something more than mere preparation, yet [perhaps] less than the last act necessary before the actual commission of the substantive crime." *United States v. Davis*, 8 F.3d 923, 927 (2d Cir. 1993) (quotation marks and citation omitted). In undertaking a substantial step for an attempt crime, "[i]t is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely

23

course of things will result in, the commission of the particular crime." *United States v. Monholland*, 607 F.2d 1311, 1318 (10th Cir. 1979). Although the act should "evidence commitment to the criminal venture," *United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir. 1976), "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982 ) (en banc), *aff'd*, 462 U.S. 356 (1983). However, because the substantial step test shifts the focus of the inquiry from what remains to be done to what has already been done, the fact further major steps remain "before the crime can be completed does not preclude a finding that the steps already undertaken are substantial." *Savaiano*, 843 F.2d at 1297 (quotation marks and citation omitted).

Although Mr. King's intent in asking Michael into the car was certainly criminal, as evinced by his statement to Michael immediately upon Michael's entrance to the vehicle, his act of grabbing Michael's arm is ambiguous. It is subject to two equally viable interpretations: Mr. King wanted to keep Michael in the car for the purpose of engaging in oral sex, or he simply did not want Michael to leave the car despite the fact Michael was unwilling to engage in oral sex.

24

Thus, we cannot say this act was "strongly corroborative of the firmness of the defendant's criminal intent." *Savaiano*, 843 F.2d at 1296 (quotation marks and citation omitted). However, in light of the other evidence properly admitted at trial, we conclude any error in the admission of the prior act did not call into doubt "the underlying fairness of the entire trial" or affect Mr. King's substantial rights. *See Hill*, 60 F.3d at 675.

For the forgoing reasons, we **AFFIRM** the judgment of the district court.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge