**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 24 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. 16-55780 |
| Plaintiff-Appellee, | D.C. No. 8:11-cv-01962-JVS-AN |
| UNITED STATES OF AMERICA, |  |
| Intervenor-Plaintiff-Appellee, | MEMORANDUM* |
| v. |  |
| WILLIE JAMES GAULT, |  |
| Defendant-Appellant, |  |
| HEART TRONICS, INC.; et al., |  |
| Defendants. |  |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted March 13, 2018
San Francisco, California

Before: WALLACE, BERZON, and CALLAHAN, Circuit Judges.

_____

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Willie Gault, former CEO of Heart Tronics, Inc. (formerly Signalife, Inc.), appeals from the district court's judgment and order of injunctive and monetary relief following a jury verdict finding him liable for negligent securities fraud in violation of Section 17(a)(3) of the Securities Act, evading internal controls in violation of Section 13(b)(5) of the Securities Exchange Act, and falsely certifying an SEC report in violation of Exchange Act Rule 13a-14. We have jurisdiction pursuant to 28 U.S.C. 1291, and we affirm.[1]

**1.** Gault contends the district court erred in denying his motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). "We review de novo the district court's denial of a Rule 50(b) renewed motion for judgment as a matter of law." *Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 797 (9th Cir. 2017).

The district court did not err. Gault failed to file a Rule 50(a) motion for judgment as a matter of law with respect to the SEC's Section 17(a)(3) and Section 13(b)(5) claims, which means the district court was precluded from considering a Rule 50(b) renewed judgment as a matter of law with respect to those claims. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1082 (9th Cir. 2009) ("[A] Rule 50(b) motion may be considered only if a Rule 50(a) motion for judgement as a matter of law has been previously made."). As to the Rule 13a-14 claim, there was

---

[1]     As the parties are familiar with the facts and procedural history, we restate them only as necessary to explain our decision.

sufficient evidence to support the jury's conclusion. Gault certified that he was responsible for establishing and maintaining internal controls, but testified that he "didn't know what internal controls were" at the time he made the certification. *See SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011) ("Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence."); *SEC v. Jensen*, 835 F.3d 1100, 1113 (9th Cir. 2016) ("[B]y definition, one cannot certify a fact about which one is ignorant or which one knows is false.").

Gault's arguments to the contrary fail. First, Gault contends that Rule 13a-14 does not create an independent claim. But that argument is foreclosed by our court's decision in *Jensen*. 835 F.3d at 1112–13. Second, Gault argues that the Form 10-Q he certified was accurate in that it accurately portrayed the company's financial condition. But in certifying the Form 10-Q, Gault represented that he was responsible for establishing and maintaining internal controls, and had evaluated those internal controls, even though he admitted at trial that he did not know what internal controls were. Therefore, there was substantial evidence that Gault's certification was false. *See id.* at 1113.

The district court did not err in denying Gault's motion for judgment as a matter of law.

3

**2.**	Gault contends the district court improperly excluded expert testimony by Professor David C. Smith, who would have testified as to whether Gault's certification of the Form 10-Q was material to investors' assessment of Heart Tronics. "The district court's decision to exclude expert testimony is reviewed for abuse of discretion." *United States v. Alisal Water Corp.*, 431 F.3d 643, 660 (9th Cir. 2005).

The district court did not abuse its discretion. Gault sought to introduce Professor Smith's testimony as evidence that Gault's certification, including his confirmation that he was responsible for establishing and maintain internal controls, was not material to investors. But the materiality of Gault's certification was irrelevant to whether he could be liable under Rule 13a-14. Rather, "Rule 13a-14 requires that for every report filed under Section 13(a) of the Exchange Act, including Form 10-Q and 10-K financial reports, each principal executive and principal officer of the issuer *must sign a certification* as to the accuracy of the financial statements within the report." *Jensen*, 835 F.3d at 1112 (citing 17 § C.F.R. 240.13a–14) (emphasis added). Gault, as a principal executive officer, had no choice but to certify the Form 10-Q regardless of whether his certification was likely to impact investors' view of Heart Tronics. The district court therefore did not abuse its discretion in excluding Professor Smith's testimony. *See Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

**3.**     Gault challenges the district court's ruling that the transactions between Heart Tronics and Robert Kolinek—in which Kolinek received convertible promissory notes and warrants to purchase Heart Tronics stock in exchange for $150,000—constituted a transaction in "securities" within the meaning of the federal securities laws. "We review de novo a district court's determination that a transaction is a 'security' for purposes of federal securities laws." *SEC v. Rubera*, 350 F.3d 1084, 1089 (9th Cir. 2003).

The district court did not err. Both Section 2 of the Securities Act and Section 3 of the Securities Exchange Act define the term "security" to include any "warrant or right to subscribe to or purchase" stock. 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10). That is what Kolinek received here: warrants to purchase 30,000 shares of Heart Tronics stock at a specific price as consideration for advancing Heart Tronics $150,000. Thus, under the plain language of the Securities Acts, the Kolinek transactions, which included warrants, were transactions in "securities." *Cf. Landreth Timber Co. v. Landreth*, 471 U.S. 681, 682 (1985) ("[A]pplying the [economic reality] test to traditional stock and all other types of instruments listed in the statutory definition [of security] would make the Acts' enumeration of many types of instruments superfluous.").

Gault does not dispute that the warrants to purchase Heart Tronics stock are "securities," but argues that the central issue is whether the convertible promissory

5

notes (as opposed to the warrants included with the notes) are securities. He contends the warrants were "merely incidental" to the notes based on the fact that Kolinek, the following year, called his loans and stated he did not want stock.

Gault cites no legal authority, and offers no persuasive reason, for treating the warrants as a non-essential feature of the transaction. The warrants were explicitly issued "[i]n consideration of" the loans and were included as specific provisions of the promissory notes. Gault himself testified that Kolinek's interest in Heart Tronics' success stemmed partly from the "upside" Kolinek would derive from "his options and his warrants" if the stock reached a certain price. Although Gault asserts that it later became clear the warrants were incidental to the transaction, the evidence provides stronger support for a different proposition: that Kolinek later came to the conclusion that Heart Tronics' financial prospects were worsening to the point it was more prudent to recall the loans, rather than exercise the warrants. This realization does not undercut the clear evidence that the warrants were part of the original, bargained-for exchange underlying the transaction.

The district court did not err in concluding that the Kolinek transaction was a transaction in "securities" for purposes of the federal securities laws.

**4.**     Gault argues the district court erred in admitting co-defendant Mitchell Stein's videotaped deposition, during which Stein asserted the Fifth Amendment in response to questions regarding Stein and Gault's representations to Kolinek prior

6

to the Kolinek transaction. "Admissions of testimony are reviewed for abuse of discretion." *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995). Where a district court errs in admitting testimony, we will reverse "only if it is more probable than not that the erroneous admission of the evidence materially affected the jurors' verdict." *United States v. Arambula-Ruiz*, 987 F.2d 599, 605 (9th Cir. 1993); *see also Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1016 (9th Cir. 1999).

We conclude that even if the district court erred in admitting Stein's videotaped deposition, it is not "more probable than not" that the error materially affected the verdict. *Arambula-Ruiz*, 987 F.2d at 605. First, the trial judge carefully instructed the jury of the limited purpose for which the evidence could be used, giving a well-crafted limiting instruction that we have no reason to believe the jury did not follow. *Hovey v. Ayers*, 458 F.3d 892, 913 (9th Cir. 2006). Second, the jury found Gault not liable on the claim for which Stein's deposition was most relevant: aiding and abetting. Moreover, contrary to Gault's suggestion, there was sufficient evidence to support the jury's finding that Gault negligently committed securities fraud in violation of Section 17(a)(3)—including Gault's transfer of the Kolinek funds to Gault's private brokerage account—such that Stein's deposition was immaterial. Therefore, we conclude the district court's admission of Stein's videotaped deposition, even if erroneous, was harmless.

**5.** Finally, Gault challenges the district court's remedies against him, including the court's disgorgement order, civil penalties, injunctive relief, and officer and director bar. We review the district court's determination of appropriate remedies for abuse of discretion. *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (disgorgement); *SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996) (injunction); *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1190 (9th Cir. 1988) (officer and director bar).

The district court did not abuse its discretion in ordering Gault to pay $101,000 in disgorgement and $27,570.58 in prejudgment interest. The disgorgement figure was "a reasonable approximation of profits causally connected to the violation" because it represented the total amount of Kolinek's investor funds that Gault subsequently transferred to his private brokerage account. *Platform Wireless Int'l*, 617 F.3d at 1096. Gault's argument that this figure is not a reasonable approximation because he "did not profit" from the transactions fails given the evidence that Gault reported the securities trades he effected with the Kolinek funds as income on his tax return.

The district court did not abuse its discretion in imposing tier-one penalties of $6,500 for Gault's violations of Section 17(a)(3) and Rule 13a-14 and a tier-two penalty of $65,000 for Gault's violation of Section 13(b)(5). The district court correctly considered "the facts and circumstances" of the case, 15 U.S.C. §

8

77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(B)(i), and was within in its discretion in imposing tier-one penalties for violations that did not require the jury to make a finding regarding Gault's mental state. The district court also was within its discretion in imposing a tier-two penalty for Gault's violation of Section 13(b)(5) given that this violation required the jury to find that Gault acted "knowingly." 15 U.S.C. § 78u(d)(3)(B)(ii) (second tier penalties within district court's discretion for Exchange Act violations that "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement").

The district court did not abuse its discretion in permanently enjoining Gault from committing future violations of Section 17(a)(3), Section 13(b)(5), and Rule 13a-14. The district court evaluated the required *Murphy* factors to determine whether there was a "reasonable likelihood of future violations of the securities laws," and concluded that the factors favored a permanent injunction. *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *Fehn*, 97 F.3d at 1295–96. In particular, the district court found that Gault had not recognized the wrongful nature of his conduct, that Gault's assurances against future violations were "insincere," and that there was a significant likelihood of future violations given Gault's intention to continue working in the business community. These and the district court's other findings on the *Murphy* factors were supported by the record.

Gault suggests the district court was prohibited from enjoining him from future negligent violations of Section 17(a)(3) on the ground that negligence is "not enough" to support an injunction. Gault is wrong. Although scienter must be proved before an injunction may issue "when scienter is an element of the substantive provision sought to be enjoined," the SEC is not required to establish scienter to enjoin violations of provisions "such as § 17(a)(2) and § 17(a)(3), which may be violated even in the absence of scienter." *Aaron v. SEC*, 446 U.S. 680, 701 (1980). Therefore, the district court did not abuse its discretion in issuing the permanent injunction.

The district court did not abuse its discretion in barring Gault from serving as an officer or director of a publicly-traded company until he demonstrates knowledge of the federal securities laws. The district court analyzed the relevant factors, *First Pac. Bancorp*, 142 F.3d at 1193 (quoting *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)), and imposed a limited bar tailored specifically to Gault's situation. Gault contends the SEC needed to prove scienter to impose an officer and director bar, but that is incorrect. We have recognized that a district court may impose an officer and director bar under its inherent equitable powers, apart from any specific statutory authority. *See id.*; *see also* 15 U.S.C. § 78u(d)(5) ("In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant,

any equitable relief that may be appropriate or necessary for the benefit of investors"). Accordingly, there was no abuse of discretion.

**AFFIRMED.**